UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1 QUIYEMABI SUMMERLIN,
D-2 SAMANTHA CHRISTINE GILLIAM,

    Defendants.

No. 21-cr-20665
Hon. Terrence G. Berg

---

## Motion to Revoke Defendant Gilliam's Bond and Requesting a No-Contact Order for Summerlin

---

Samantha Gilliam's bond conditions forbid her from having contact with her co-defendant, Quiyemabi Summerlin. Despite this, Gilliam has had regular contact Summerlin. Due to this repeated violation, the government moves to revoke her bond. 18 U.S.C. § 3148(b)(1)(B). The Court should also order Summerlin to have no contact with Gilliam, witnesses, and victims, either directly or through third parties.

## Procedural History

On October 15, 2021, a criminal complaint charged Summerlin with sex trafficking of adult victims in violation of 18 U.S.C. § 1591. The complaint also charged Summerlin with distribution of controlled substances, maintaining a drug premises, and being a felon in possession of a firearm. (ECF No. 1, PageID 1–15). The complaint alleged that Summerlin provided heroin and crack cocaine to drug-addicted women, and that he forced them to perform commercial sex dates out of a residence on Berden Street in Detroit. The complaint also alleged that Summerlin was occasionally violent with his victims.

Summerlin consented to detention pending trial. The next month, the grand jury returned a six-count indictment charging Summerlin with four counts of sex trafficking and drug and firearms offenses. (ECF No. 11, PageID 11–31).

On February 24, 2022, Summerlin's live-in girlfriend and the owner of the house on Berden Street, Samantha Gilliam, was charged in a criminal complaint with conspiracy to engage in sex trafficking in violation of 18 U.S.C. § 1594(c) and maintaining a drug premises. (Case No. 22-mj-30095, ECF No. 1).

On March 4, 2022, Gilliam had an initial appearance on the complaint and was released on bond with conditions. One of her bond conditions directed her to "avoid all contact, directly or indirectly, with any person who is or may become a victim or witness in the investigation or prosecution, including but not limited to . . . Quiyemabi Summerlin." (Case No. 22-mj-30095, ECF No. 1, PageID 22). This condition was also highlighted during her court appearance; pretrial services orally stated that Gilliam could not have contact with Summerlin, identifying him by name on the record. (Case number 22-mj-30095, Audio of Initial Appearance, ECF No. 5, 3:46-4:05). The magistrate judge then spoke directly with Gilliam to make sure that she understood the conditions of her release. Specifically, the judge stated: "You're to avoid all contact with victims, witnesses, in the case, including the person that was mentioned by pretrial services." (*Id.*, 5:01-5:11). After the Court finished reading the list of bond conditions to Gilliam, the judge asked her if she understood the conditions, understood what could happen to her if she failed to follow them, and asked her if she would abide by them. Gilliam replied affirmatively to the Court's questions. (*Id.,* 5:29-6:00).

3

On April 14, 2022, the grand jury returned a superseding indictment charging Summerlin with additional crimes and adding Gilliam as a co-defendant. (ECF No. 23, PageID 94–105).

**Gilliam's Contact with Summerlin**

Despite her explicit no-contact bond condition, Gilliam has had regular communication with Summerlin since the date of her initial appearance. Initially, Summerlin called Gilliam's sister to reach Gilliam. But more recently, Summerlin has called Gilliam directly, either from his own account or using the account of another inmate. Gilliam has repeatedly and consistently accepted Summerlin's calls from jail.

From May 12, 2022, to July 10, 2022, Summerlin contacted Gilliam 13 times, using different inmates' accounts to place the calls in an attempt to avoid detection by law enforcement. In each instance, Gilliam accepted Summerlin's calls.[1] Summerlin is aware that his calls are recorded, and that Gilliam is not supposed to talk to him. But Summerlin is also aware that investigators can search for Gilliam's

---

[1] The government has provided a copy of the recordings referenced to defense counsel. Upon request, the government will also provide a copy to the Court.

phone number. In several calls, Summerlin directs Gilliam to get a new phone number.

For example, on May 12, 2022, Summerlin called Gilliam from another inmate's account to discuss the case. Summerlin told Gilliam to "keep doing what you says you was doing: you ain't been there, you don't know nobody … you don't know those people, and they don't know you." Summerlin stated that he did not want to discuss more on that line, and that he would three-way call Gilliam later. Summerlin told Gilliam that he would call her from "Holly's number." He later told her to treat her phone "delicate." Summerlin then asked Gilliam to provide him with her son's phone number so that Summerlin could reach her on that line. Gilliam declined to provide her son's phone number. Summerlin then suggested that Gilliam open a Securus account in someone else's name so that they could text without detection. At the end of the call, Summerlin assured Gilliam that she is: "not facing life," "you ain't feelin' to get life," and "you ain't feelin' get shit." He told her not to let anybody "be in [her] ear." Summerlin then stated that nobody died, and "someone has to die for somebody to get life." He then asked if she talked to his attorney, to which she replied she had. Summerlin

5

asked Gilliam if his attorney told Gilliam she was facing life, and she said "no."

On May 19, 2022, Summerlin instructed Gilliam to have her attorney talk to his attorney. He then relayed to Gilliam information about a human trafficking victim that he referred to as "little retard" or "retardo." Summerlin gave Gilliam specific dates when "little retard" said she lived the basement and Summerlin lived upstairs. Summerlin also said that the government "don't got enough people" to testify at trial and did not "know where some of the motherfuckers at." Gilliam and Summerlin discussed Gilliam's defense; namely, that she was at work when the prostitution and drug dealing occurred in her home and that she did not witness anything. Summerlin also asked Gilliam if she had his ID and suggested that she open a cell phone account in his name.

On May 30, 2022, Summerlin called Gilliam using a different inmate's account. During the conversation, Summerlin and Gilliam discussed ways that they could speak to each other without the calls being tracked or recorded. Summerlin told Gilliam to get a new phone because he believed that Gilliam's phone number was alerting the

6

government to their communication. Gilliam reminded Summerlin that any time he is on the phone, it is recorded. Later, Summerlin suggested that Gilliam buy a card and put money on the card so that Summerlin could call her from someone else's account. Summerlin and Gilliam also discussed the case; Summerlin told Gilliam that he believed that one of victims—again calling her "retardo"—would not come to court. Summerlin also said that the government does not want to let go of the names of the witnesses in the case, but once the defense has the names, they "can get to work." Summerlin suggested ways to impeach the government's witnesses, saying: "We can say old girl was on dope, she got this in her background."

The standard for revocation of release is set forth in 18 U.S.C. § 3148(b)(1). The Court can revoke Gilliam's bond if there is clear and convincing evidence that she has violated a condition of her release and that she is unlikely to abide by any condition or combination of conditions of release. Here, Gilliam was explicitly warned not to have contact with Summerlin. In the jail calls reviewed by the FBI, it is obvious that both Gilliam and Summerlin know that they are not supposed to talk, and they discuss ways in which they could lower the

7

risk of detection. And not only does Gilliam communicate with Summerlin in violation of her bond conditions—she specifically discusses the facts of the case, possible defenses, and Summerlin's contact with a victim. This is exactly the sort of impermissible communication that her bond conditions are designed to avoid. Gilliam has shown that she is unwilling to abide by her bond conditions, and her bond should be revoked.

### Summerlin's Contact with a Victim/Witness

Gilliam isn't the only person that Summerlin has contacted to discuss his case. Summerlin has also contacted one of his sex trafficking victims.

On May 25, 2022, Summerlin called a victim from his own account. Amongst other things, Summerlin told the victim that he loves and cares for her. Summerlin also told the victim that he is not mad at her, but that he just wants her "to do the right thing." Summerlin then told his victim: "I'm going to be honest; I need you." The victim told Summerlin that she was not going to court. Summerlin replied that he knew and then assured her that when he gets home, he's "got [her]."

8

This is not the first time that Summerlin has had contact with this victim. Before Gilliam's arrest, he repeatedly asked Gilliam and others to contact the victim. For example, on December 14, 2021, Summerlin called a male associate (Individual 1). Summerlin asked Individual 1 to pass along a phone number for his new lawyer to the victim. Summerlin stated that his lawyer wanted to hear from someone. Summerlin said that he had "something" and that he was trying to find out a way to get it to them.

Several days later, on December 17, 2021, Summerlin spoke to Gilliam about the "clean up" of the basement. Based on context and other calls, the government believes this to be a reference to "cleaning up" the basement of Gilliam's house to make it appear that the offense conduct did not occur and that one of the sex trafficking victims is just a housecleaner. Summerlin instructed Gilliam to take a picture of the victim to show "that ain't nobody scared," and because doing so would put them "right on the map where [they] need to be that [the victim] is still the housekeeper."

The next day, Gilliam reported back to Summerlin that the victim had called, and the victim was going over to the house in a few minutes.

9

Summerlin then called Individual 1 the next day and asked if the victim had made it over, to which Individual 1 replied that they had and they had cleaned the basement.

On December 30, 2021, Summerlin called another individual and reminded her to watch her mouth on the phone. He then asked her to dial in the victim, which she did. Summerlin spoke directly to the victim, telling her to get to his lawyer to sign an affidavit. Summerlin told the victim what to say: that she never worked for him, but that he knew what was going on. Summerlin then stated that he would make sure the victim got "a 20." After speaking with the victim, Summerlin asked the original party about who he thinks is a potential witness in the case and tried to find out if that person is locked up.

Summerlin has repeatedly attempted to reach out to witnesses and victims to influence their testimony and the outcome of his case in violation of 18 U.S.C. § 1591(d). The Court should explicitly order Summerlin to have no contact, directly or through third parties, with any witnesses or victims.

## Conclusion

The government requests that the Court cancel Gilliam's bond and direct Summerlin to have no contact with any witnesses or victims.

>Respectfully submitted,
>
>DAWN N. ISON
>United States Attorney
>
>*s/Sara D. Woodward*
>Sara D. Woodward
>Assistant United States Attorney
>211 W. Fort Street, Suite 2001
>Detroit, MI 48226
>sara.woodward@usdoj.gov
>(313) 226-9180
>
>*s/Tara Mathena Hindelang*
>Tara Mathena Hindelang
>Assistant United States Attorney
>211 W. Fort Street, Suite 2001
>Detroit, MI 48226
>tara.hindelang@usdoj.gov
>(313) 226-9543

Dated: August 24, 2022

**Certificate of Service**

I certify that on August 24, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

Maria Mannarino
Attorney for Defendant Samantha Gilliam

Christopher Sinclair
Attorney for Defendant Quiyemabi Summerlin

<u>s/*Sara D. Woodward*</u>
Sara D. Woodward
Assistant U.S. Attorney
U.S. Attorney's Office