UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,

                                                        Case No. 21-cr-20665
                                                        Hon. Terrence G. Berg

v.

QUIYEMABI SUMMERLIN,

      Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

      Quiyemabi Summerlin built a business around the exploitation of vulnerable women for his own profit. He provided his victims with a constant supply of heroin and crack cocaine, increased their dependencies on those deadly drugs, and required them to perform commercial sex dates to fund his livelihood. Summerlin's business plan was coercive, and he successfully manipulated numerous victims' severe drug addictions over the course of years. When necessary, Summerlin used violence to ensure his victims' compliance. He also raped several of his victims.

The government respectfully requests that the Court accept the parties' Rule 11 Plea Agreement and sentence Summerlin to 210 months' imprisonment.

*Procedural History*

An October 2021 criminal complaint charged Summerlin with sex trafficking, drug trafficking, and unlawfully possessing a firearm. (PSR ¶ 1.) Summerlin consented to pre-trial detention and was ordered detained on October 20, 2021. (PSR ¶ 3.)

A grand jury returned an initial six-count indictment charging Summerlin with the above-described offenses, but that indictment was superseded twice, each time adding additional charges for additional sex trafficking victims. (PSR ¶¶ 6.) On May 24, 2023, a Second Superseding Indictment charged Summerlin and his girlfriend, Samantha Gilliam, with conspiracy to engage in sex trafficking (Count 1), substantive counts of sex trafficking victims AV-1, AV-4, AV-5, and AV-6 (Counts 2, 6, 7, and 8), and maintaining a drug premises (Count 10). Summerlin was also charged with trafficking AV-2 and AV-3 (Counts 3, 4, 5), possession with intent to distribute heroin, fentanyl, and cocaine (Counts 11, 12, 13), and felon in possession of a firearm

2

(Count 14).

On May 10, 2024, Summerlin pleaded guilty pursuant to a plea agreement to Counts 4, 6, 7, 10, and 14. (PSR ¶ 11.) The parties' plea agreement provides that a sentence of 210 months is the appropriate disposition of the case. (PSR ¶ 141; ECF 61: Plea Agreement, PageID 288.)

## *Statement of Facts*

In 2021, the FBI encountered numerous women that reported being forced by someone named "Q" to perform commercial sex dates in the basement of a home in Detroit in exchange for drugs. Some women reported violence or being locked in the basement. The FBI identified the house and identified "Q" as Quiyemabi Summerlin, a 41-year-old convicted felon and sex offender. (PSR ¶ 15.)

On October 14, 2021, the FBI executed a search warrant at Summerlin and Gilliam's house on Berden Street in Detroit, near the Grosse Pointe border. Summerlin was present. The FBI found two women in the basement of the home, and both made statements that they had been trafficked. Both women were pregnant. Blood draws confirmed that they had narcotics in their system. A search of

Summerlin and Gilliam's house recovered cocaine, heroin, fentanyl, and a firearm. (PSR ¶ 17.) Summerlin was arrested and charged in a criminal complaint the next day.

After Summerlin's arrest, the FBI worked relentlessly to identify women that had been trafficked by Summerlin. In total, the case agent identified and interviewed over 20 women who performed commercial sex dates at the Berden house in exchange for narcotics. At the hands of Summerlin, the women had similar experiences. They reported that Summerlin lived in the house with Gilliam and her children. Gilliam worked a normal job while Summerlin kept drug-addicted women in the basement. The basement had a bedroom and a bathroom. Summerlin gave the women cocaine, fentanyl, and heroin on a plate. Summerlin arranged commercial sex dates for the women, and they gave the money from customers directly to him before the date. Some women were allowed to come and go, but others reported being locked in the basement. Some reported that Summerlin was violent with them. Many reported that he raped them. (PSR ¶ 22-27.)

## SENTENCING GUIDELINES CALCULATION AND RELEVANT 3553(a)a FACTORS

4

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors to Summerlin's case are evaluated below.

### *The Sentencing Guidelines Range*

Although advisory, the Sentencing Guidelines remain an important factor under Section 3553(a) when determining an appropriate sentence. Prior to Summerlin's guilty plea, the government estimated that Summerlin's advisory guideline range would be 188 to 235 months. The parties' plea agreement stipulated that a sentence at

5

the middle of that range—210 months—was the appropriate sentence for Summerlin.

In the PSR, the Probation Department calculated a higher guideline range than anticipated by the parties, based on the inclusion of additional victims beyond the counts of conviction. (PSR ¶ 42.) As the PSR notes, "here, if during the specified date range, while trafficking AV-2, AV-4, or AV-5, additional victims were trafficked for the same purpose, additional calculations should be applied." Accordingly, the Probation Department concluded that Summerlin's guideline range is 235 to 293 months. (PSR ¶ 139.) Neither party has filed an objection to that calculation.

### *Nature and Circumstances of the Offense*

Summerlin committed numerous crimes: sex trafficking, drug trafficking, maintaining a drug premises, and being a felon in possession of a firearm. He built a business through violence and coercion without regard to the consequences for other human lives. Summerlin exploited the vulnerabilities of women addicted to controlled substances for his own profit. Always coercive and sometimes forceful,

Summerlin ensured that the women he controlled continued to provide him with income.

In a victim impact statement, AV-4 explains that what was business for Summerlin for an "unimaginable nightmare" for her. (Exhibit A, AV-4 Victim Impact Statement, *submitted under seal*.) She felt like she was "living in Hell," "forced to work in environments that drained me to the point of unconsciousness." (*Id.*) She was subject to "incessant threats from my captor" that "instilled a profound sense of fear that consumed me daily." (*Id.*) Summerlin subjected AV-4 "to relentless torture day after day." (*Id.*)

AV-2 had a similar experience. In her victim impact statement, she remembers being "held down and raped while staring at the gun as a reminder of what would happen if I didn't lie there and allow him to take it." (Exhibit B, AV-2 Victim Impact Statement, *submitted under seal.*) She describes the "the physical pain of guy after guy that he'd send in the basement to make his money" as "sometimes unbearable." (*Id.*, page 2.) If she refused a date, Summerlin would "make you go through withdrawals and/or beat you into doing it anyways. And he would be listening on a baby monitor to ensure you obeyed and weren't

7

keeping a single dollar for yourself." (*Id.*) Summerlin "used my weakness of having a drug problem to his advantage, lured me in with it and mentally and physically tortured me for months, in many different ways and for his actions I'm forever traumatized." (*Id.*, page 4.)

### *History and Characteristics of the Offender*

At the time he committed the crimes discussed above, Summerlin was a convicted sex offender with little stable employment history even though he had a GED and had previously worked at an assembly plant. (PSR ¶ 132-36.)

Summerlin's criminal history is extensive; he has spent a large part of his adult life incarcerated. (PSR ¶ 132.) In 1996, at just 17-years-old, Summerlin was convicted of attempted delivery and manufacture of a controlled substance, less than 50 grams. (PSR ¶ 94.) He was sentenced to probation under HYTA, but his HYTA was revoked after probation violations. (*Id.*) In 2001, Summerlin pled guilty to receiving and concealing stolen property and received a sentence of 6 months in custody, with three years of probation. (PSR ¶ 95.) Then in 2002, Summerlin was convicted of criminal sexual conduct in the third

degree for sexually assaulting a person between the ages of 13 and 15. (PSR ¶ 96.) In that case, Summerlin sexually assaulted a minor female in the basement of a residence, then threatened her days later before again raping her. (*Id.*) Summerlin was sentenced to 4 to 15 years in prison for this offense. He was released on parole in 2010, but returned to custody for parole violations before being paroled again in 2012. He was discharged from parole in March 2014. (*Id.*)

Following his 2002 conviction, Summerlin was required to register as a sex offender. He violated that requirement in 2016, and was convicted of failing to comply with reporting duties in September 2016. (PSR ¶ 97.) Summerlin received a sentence of 30 months' probation. (*Id.*)

### *Seriousness of the Offense, Promoting Respect for Law, and Providing Just Punishment*

Summerlin exploited vulnerable women who were addicted to dangerous drugs to earn a profit for himself. His crimes are serious in both scope and reach, and have profoundly impacted the women he exploited. Summerlin learned the vulnerabilities of women who used controlled substances and turned their struggles into a business model. Knowing the effects of withdrawal, Summerlin withheld drugs to coerce

9

the women he kept under his roof, in his basement, to perform commercial sex dates so that he could make more money. The physical agony and psychological trauma suffered by these women were of no consequence to Summerlin. He did this while also distributing controlled substances to other people in the community. Summerlin contributed to the epidemic gripping our nation on two fronts – using drugs to control women and distributing those same drugs to those willing to pay Summerlin's price. His crimes are reprehensible, and Summerlin did not do it just one time or to just one victim: this was his way of life, and he exploited numerous women for years.

In their victim impact statements, AV-4 and AV-2 explain how Summerlin's crimes continue to affect their lives today. For AV-4, "each day is a struggle as I wrestle with the overwhelming fear that I will never reclaim my happiness or my sense of self." (Ex. A.) For AV-2, her ability to have healthy relationships is "affected by [Summerlin's] actions still today." (Ex. B.) She struggles to show affection to her spouse, and fears that people she loves will leave "if they find out how disgusting, tainted, and useless I feel I am." (*Id.*, page 2.) "Family activities, outings with the kids, school and work functions all feel like

heart-pounding dreadful chores." (*Id.,* page 3.) AV-4 will "forever carry the mental scars from Mr. Summerlin!" (*Id.*, page 4.)

A sentence of 210 months would be just punishment for Summerlin's crimes. Such a sentence, which is above the statutory minimum of 15 years, acknowledges the serious nature of Summerlin's crimes and would promote respect for the law by acknowledging the real victimization of those he harmed.

### *Deterrence*

The above considerations impact another § 3553(a) factor – the need to deter such conduct in the future. Sentencing in the federal system has long contemplated the ability to provide both specific and general deterrence. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008); *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006). A significant sentence is necessary so that Summerlin and others will understand the consequences of sex trafficking and drug trafficking offenses, and deter him and others from engaging in this conduct in the future.

### *Protect the public from further crimes of the defendant, 18 U.S.C. § 3353(a)(2)(C)*

Prior custodial sentences have not stopped Summerlin from continuing to threaten the public through acts of violence and drug trafficking. Summerlin's criminal record and his actions in this case show that he will continue to commit violent acts against others. He poses a danger to the public, and a sentence of 210 months will serve the goal of protecting the public from further crimes of the defendant.

### *Avoiding unwarranted sentence disparities*

A significant sentence is necessary to avoid unwarranted sentencing disparities. Federal sentences for violent pimps are generally long. Even the most remorseful and non-violent pimps convicted of sex trafficking using force, fraud, or coercion are subject to the mandatory minimum sentence required by law: 15 years. Summerlin used violence and drug addiction to control his victims. A sentence above the mandatory minimum is appropriate here. A 210-month sentence is consistent with sentences for defendants with similar backgrounds that committed similar crimes, and will avoid unwarranted sentencing disparities.

## CONCLUSION

For the reasons stated above, the United States asks the Court to impose a 210-month sentence.

                                            Respectfully submitted,

                                            DAWN N. ISON
                                            UNITED STATES ATTORNEY

                                            */s Sara D. Woodward*
                                            SARA D. WOODWARD
                                            TARA M. HINDELANG
                                            Assistant United States Attorneys
                                            211 W. Fort Street, Suite 2001
                                            Detroit, MI  48226
                                            Phone: 313-226-9100

August 20, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Christopher Sinclair, counsel of record.

/s Sara D. Woodward
SARA D. WOODWARD
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9180
sara.woodward@usdoj.gov

August 20, 2024